NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 15-916

STATE OF LOUISIANA

VERSUS

BENGY R. COOLEY

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 80641
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

CONVICTION AND SENTENCE AFFIRMED.

Asa Allen Skinner
District Attorney, Thirtieth Judicial District Court
Terry Wayne Lambright
Assistant District Attorney
P. O. Box 1188
Leesville, LA 71496-1188
(337) 239-2008
COUNSEL FOR APPELLEE:
    State of Louisiana

**Jonathan Brown**
**Attorney at Law**
**1025 Mill Street**
**Lake Charles, LA 70601**
**(337) 564-6990**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Bengy R. Cooley**

**GREMILLION, Judge.**

Defendant, Bengy Cooley, was found guilty of pornography involving juveniles, a violation of La.R.S. 14:81.1, after a three-day bench trial. He was sentenced to two years at hard labor, without benefit of probation, parole, or suspension of sentence. In *State v. Cooley*, 15-40 (La.App. 3 Cir. 6/3/15), 165 So.3d 1237, we affirmed Defendant's conviction and sentence but remanded the case for an evidentiary hearing as to whether Defendant knowingly and intelligently waived his right to a jury trial. Following a hearing, the trial court found Defendant's waiver of jury trial was knowing and intelligent.

Defendant now appeals the trial court's decision that he knowingly and intelligently waived his right to a jury trial. We find no merit in Defendant's assignment of error and affirm his conviction and sentence.

## JURY-TRIAL WAIVER

In his sole assignment of error, Defendant alleges that the trial court erred in finding that he entered a knowing and intelligent jury-trial waiver. We review a trial court's finding regarding waiver of a jury trial using the abuse of discretion standard. *State v. A.D.L.*, 11-1142 (La.App. 3 Cir. 5/2/12), 92 So.3d 989. Appellate counsel asserts that this court already found that the record was insufficient to find Defendant knowingly and intelligently waived his right to a jury trial, and the State failed to offer any evidence at the evidentiary hearing to overcome the insufficiency. According to appellate counsel, Defendant's former attorneys who testified at the evidentiary hearing "spoke in general terms about what they hoped they would have done or what they usually do." Appellate counsel asserts that the evidence introduced at the evidentiary hearing "at best, shows that prior counsel may have advised the defendant of his right to trial by

jury." Thus, appellate counsel argues that there was no evidence that Defendant waived his right to a jury trial "knowingly, intentionally, or otherwise."

In response, the State reiterates its belief that the question of whether Defendant's jury-trial waiver was knowing and intelligent should not be considered in an error patent review. The State then notes that at his arraignment, Defendant was advised of his right to a trial by judge or jury. The State further asserts that Defendant did not raise the jury trial issue until the case was remanded by this court for an evidentiary hearing, at which the testimonies of Defendant's previous attorneys established that Defendant knowingly and intelligently waived his right to a jury trial.

*Defendant's Original Appeal*

In Defendant's first appeal, this court noted that Defendant's attorney filed a Motion to Elect Judge Trial, which was granted by the trial court. We further noted that the motion was signed only by Defendant's attorney, and the record contained no indication that Defendant knowingly and intelligently waived the right to a jury trial. Further describing the record, this court stated:

> The clerk of court of the district court attested in an affidavit that there were no minute entries or untranscribed hearings discussing Defendant's waiver of jury trial. The clerk of court also noted in the affidavit that "defendant was advised of his right to a judge or jury trial on February 1, 2011 and May 16, 2011." However, there are no minute entries or transcripts for February 1, 2011 or May 16, 2011 in the record or provided by the clerk in the supplemental record. At a proceeding dated May 13, 2011, the transcript indicates that Defendant was advised of his right to be tried by a jury in the context of waiving his right at the guilty plea proceeding, which plea was later withdrawn. Thus, this matter must be remanded to the trial court for an evidentiary hearing.

*Id.* at 1239-40.

2

*Evidentiary Hearing*

At the evidentiary hearing held when the case was remanded, the trial court asked Defendant if he had raised the issue of a knowing and intelligent jury-trial waiver in any trial proceeding or on appeal. Defendant responded, "Yes, [y]our [h]onor, but not in the court system." According to Defendant, he raised the issue with now-Judge Sharon Wilson, one of his attorneys at the time.

The State called Judge Wilson to testify at the hearing. Judge Wilson testified that she represented Defendant in his trial for possession of juvenile pornography. When asked how it came to be that Defendant was tried by a bench trial, Judge Wilson replied, "We waived his right to a jury trial. I filed a motion to waive his right to a jury trial." Judge Wilson identified the motion she filed in the trial court as well as her signature on the motion. When asked if she had any discussions with Defendant prior to filing the motion to waive jury trial, Judge Wilson responded as follows:

A:     Yes.

Q:     And it was specifically about waiving the jury trial?

A:     It would have been in discussions about various things, yeah. It wouldn't have been a separate discussion about waiving a jury trial, it would have been included with other things.

Q:     Would you have filed this motion if you had not discussed with him the waiver of the jury trial?

A:     No, I would not have filed it without talking to him.

Q:     And would you have filed that if you didn't believe that he understood and wanted to have a bench trial versus a jury trial?

A:     I think I understand what you've asked me. No, I would not have filed it over any objection from him if that's the question.

Q:     That's correct. You wouldn't have filed that if he'd objected in any fashion to this, correct?

3

A:     That is correct.

Judge Wilson then testified that she had been practicing law for twenty-three years, seventeen of which were as a prosecutor. Judge Wilson opened her criminal defense practice in June 2009. When asked if she understood that a defendant has a right to a jury trial if he chooses, Judge Wilson stated that she understood that. When asked if Defendant ever stated that he wanted a jury trial, Judge Wilson responded:

> A:  He never said either way, he - - he's not an animated person in the sense that he initiates discussions. He's more of a listener when you talk to him. When we had the discussion about waiving, my memory of the discussion is that he told me that he had had a discussion, I think, with Ms. Lisa Nelson and, maybe, Tony Tillman about that possibility when I brought it up.
>
> Q:     But your appreciation was that he was - - he wanted a bench trial in this particular case?
>
> A:     My appreciation is that I gave him the benefit of my thoughts and he did not object.
>
> Q:     And the benefit of your thought was to request a bench trial, correct?
>
> A:     Yes, sir.
>
> Q:     Did you have any discussions with Ms. Nelson or Mr. Tillman in reference to that recommendation?
>
> A:     I had no discussions with Ms. Nelson; Mr. Tillman and I have a friendship and I do remember having a friendly conversation with him about that he thought in these sorts of cases that's probably the best course of action and we discussed Bengy. But, not specifically about him waiving, just that's a better course of action.

Judge Wilson also testified Defendant was never absent during the trial, wherein she mentioned the fact that the defense had waived a jury trial. Finally, Judge Wilson testified she would not have filed a Motion to Elect Judge Trial if she had any doubt Defendant wanted a bench trial.

4

On cross-examination, Judge Wilson acknowledged the motion to elect judge trial was not signed by Defendant even though it should have been. Judge Wilson also agreed that the normal process is for a judge to have a colloquy with a defendant as to whether the jury-trial waiver is knowing and intelligent.

When Judge Wilson was examined by the trial court, the following colloquy took place:

BY THE COURT:

Q:     Judge, did you - - did you advise your client at the time of his Constitutional Right to a trial by jury and that that was his choice to make?

A:     I said to the prosecutor it would be nice to have the benefit of my files. I don't - - I honestly don't remember everything that I've said to Bengy. Under oath, I can say I hope that I did, you know, but without being able to look at my notes and reflect on conversations that I've - - I've had many, many, meetings with him. I can't say yes I did, I hope that I would have and I think that I probably did.

Q:     Was there - - did you make any objections on the record or did your client at the time, Mr. Cooley, make any objections on the record concerning, hey, we want a jury trial, not a judge trial, once it actually proceeded?

A:     No, he - - I never had a time in representing Bengy Cooley where he questioned my judgment. So, no, he's never done that, he was a cooperative client and I think he valued the things that I said to him. It's just - - the first question you asked me without my notes, I don't know exactly what I said.

        . . . .

Q:     At any time prior to the trial or during the trial, did Mr. Cooley ever - - the defendant and your client, did he ever say I want a trial by jury?

A:     During the trial itself?

Q:     Yes, or before?

A:     Okay, during the trial, no. Before the trial I remember him saying he thought a jury would be beneficial, regular people, and my answer to that question was probably to talk strategy with him.

5

Q:     Okay.  Were you his attorney when he was arraigned or was that Ms. Nelson?

A:     At the time of arraignment it would have been Ms. Nelson.

Q:     Okay and did you ever have a conversation - - when we arraign someone here I say you have so many days and you get with your lawyer, talk about whether you want a trial by judge or by jury.  Did you actually ever have that conversation with Mr. Cooley concerning jury trial, judge trial, strategy?  I think you've alluded to it.

A:     Yeah.  We had and that's - - I alluded to it with the prosecutor's questions.    Our   conversations   weren't   like   we're   having   a conversation about this . . .

Q:     Yeah.

A:     . . . it would have been part - - all a part of a conversation about a lot of different things at one time.

Q:     Okay.  Now, did anyone make a promise to him in anything in order to get him - - did you promise him or did the Judge or the DA or anybody promise him anything in order for him not to have a trial by a jury which he's entitled to under the Constitution?

A:     No, sir.

Q:     Okay.  Did you likewise in your conversations with him - - did you likewise go over the fact that it wouldn't be a jury deciding his - - the entire case, it would be a judge alone?  From your memory, if you don't remember, you just . . .

A:     Right.  I mean, he knew a jury wasn't sitting in the box.

Q:     Yes.

A:     So, I don't remember saying it like that.  I mean, I'm sure I said something similar.

Q:     Okay and did - - did anyone in your knowledge force, coerce, or threaten him in order to get him to waive his right to trial by jury?

A:     No.

On another re-direct by the State, Judge Wilson reiterated that she would not have filed the motion to waive jury trial if she had any doubt that Defendant was willing and wanting to waive a jury.

6

Lisa Nelson, an attorney appointed to represent Defendant in 2011, testified that she represented Defendant at his arraignment. Ms. Nelson read the arraignment minutes, which stated that Defendant was informed of his right to trial by judge or jury. When asked if she had any discussions with Defendant about waiving a jury trial, Ms. Nelson responded as follows:

A: Yes.

Q: And did Mr. Cooley wish to have a jury trial or a bench trial at the time you were representing him?

A: Mr. Cooley and I had talked on several occasions prior to the plea which was later withdrawn about the possibility of entering into a waiver. Talked about the pros and cons of it because of the nature of the case. I had suggested that that might not be a bad idea for him and we had had probably two or three discussions. He had indicated to me that that was something that he was interested in doing and I can't recall why we - - why it hadn't gotten done prior to the plea and then he informed me after we entered the plea that he wanted to withdraw his plea because he wanted to go to trial and he did, in fact, want to have a trial by a judge.

The State then asked Ms. Nelson to look at a motion to withdraw plea of guilty that was filed on July 28, 2011, and contained Ms. Nelson's signature. According to Ms. Nelson, the motion stated that "upon reflection defendant would prefer to go to trial and that issue to be determined by a judge." Ms. Nelson added, that course of action was at Defendant's direction." When asked if she would have put that language in the motion if it had not been Defendant's desire, Ms. Nelson responded negatively. The following colloquy then took place between Ms. Nelson and the prosecutor:

Q: Ms. Nelson, as to your understanding you would not have filed and put that language in this document and file[d] it with the Court if you had been [sic] not had the understanding that that's what he wanted?

A: No, Mr. Cooley contacted me and was very specific as to what he wanted and I don't regularly file motions to withdraw pleas, so . . .

7

Q:     I'm going to back up just a minute to how did you get involved in this case?

A:     I was appointed, I have been employed by the Public Defender's Office and prior to that the Indigent Defender Board and I have been in that capacity since 1993.

. . . .

Q:     So, you're well familiar with the defendant's right to a jury trial in the State of Louisiana?

A:     Yes.

. . . .

Q:     And who is the Chief Public Defender in Vernon Parish?

A:     Tony Tillman.

Q:     And is Mr. Tillman aware of Mr. Cooley's case and the charges?

. . . .

A:     I am aware from personal knowledge because I was present with conversations when Mr. Tillman was there with Mr. Cooley. Prior to Mr. Cooley entering his plea Mr. Cooley had a lot of questions and Mr. Tillman as my boss, head of the Public Defender's Office, he also reviewed the photos and the evidence that they had against Mr. Cooley and he did, in fact, discuss that with him. I was there at the meeting, so prior to the plea we both discussed those issues with him. After the plea, in addition to the call that I had from Mr. Cooley, I also had a call from Mr. Tillman who said that he had received an additional call from Mr. Cooley with the same information that he wanted to withdraw his plea or that he had come by his office, I'm sorry, and he had told him that.

. . . .

Q:     Ms. Nelson, when you were present with Mr. Tillman and Mr. Cooley was there a discussion in reference to the defendant's right to a jury trial?

A:     We - - Mr. Tillman was present when we went through the rights form with Mr. Cooley.

. . . .

8

Q: Let me - - let me - - I don't mean to cut you off, but let me direct you with regard to that. I'm just simply asking that you were there and Mr. Tillman was there, Mr. Cooley was there, did you have discussions at that time in reference to Mr. Cooley's right to a jury trial?

A: We went through the rights form and we explained those to him, so that is on the rights form . . .

Q: Yes . . .

A: That was one of the things that we discussed.

Q: Yes . . .

A: I don't know that we went into a great deal of detail but we did talk about it.

Q: So, your answer is yes?

A: Yes.

Q: Okay. As part of that discussion did you discuss having a bench trial instead of a jury trial?

A: At that discussion, that particular discussion, we were talking about the plea and, so, we were mostly going through then the rights and responsibilities because there was a plea. It was after the plea that Mr. Cooley contacted me and that I was told the other information about contact that was made. But at that time it was just basic you understand this, you know, the form that we do. Because we assumed it was going to be resolved with the plea at that point.

Q: You did, in fact, have discussions with him in reference to the waiver of the jury trial?

A: If I remember correctly and I guess this is just because of me and the way we do things, the nature of the case being what it was, child pornography, I'm pretty sure that I discussed that with Mr. Cooley the first time he came to my office. That's pretty standard for me to talk to a defendant in a case where a child is a victim and it was a sexual offense that that's something that they might want to consider for down the road and talk to them about that and, you know, plant that seed, so to speak. And, then I do recall talking to Mr. Cooley about that prior to the hearing. In fact, I remember him even asking me at one point about signing what we needed to do [sic] to do that and it just never got done because it got up to the plea and we got it resolved.

9

On re-direct, the State again asked Ms. Nelson about her plans to file a waiver of jury trial if the trial court granted Defendant's motion to withdraw his guilty plea:

Q:      You had filed the motion to withdraw on July 28th, of 2011.  If the Court had granted that motion to withdraw the plea you had your waiver of the jury trial ready to be filed, is that correct?

A:      Well, I was going - - I didn't have one printed up in the record. I have my standard form that - - yeah, but I would have filed it immediately.

Q:      You would - - you would have - - you had planned and would have filed that at that point?

A:      That was the plan.  If the plea was withdrawn then that was what the plan was.

Q:      And you wouldn't have that in mind unless you'd had a full discussion with Mr. Cooley in reference to the waiver of the jury trial?

A:      We had discussions.

The State then questioned Ms. Nelson about the Waiver of Constitutional Rights and Plea of Guilty form signed by Defendant.  Ms. Nelson identified the form and explained that it was adjusted to reflect the fact that Defendant entered a no contest plea.  According to Ms. Nelson, the form stated that the first right waived by Defendant was his right to be tried by a jury or "at [his] election to be tried by a judge."  When asked if she had any question that Defendant knew he had a right to a jury trial in this case, Ms. Nelson responded, "I don't have any question that I believe he did, yes."

The trial judge then asked Ms. Nelson some questions, resulting in the following colloquy:

Q:      Did anyone - - did you, in your representation of the defendant, did you go over his Constitutional Right to have his case decided by a judge, but more specifically, a jury?  Do you remember doing that?

A:     Yes, Judge, we certainly did that. I did that when we did the plea form but we had discussed that prior to that about, you know, having - - having a judge trial versus having a jury trial.

Q:     And were there any - - when in your discussions were there any promises made that would - - for him to waive the right to trial by jury to get him to have a judge trial?

A:     No, sir, it was my recommendation when I first mentioned it to him because of the nature of the charge and because of just, you know, the experiences that I have had. But - - but there was nothing at that time that any assurances or promises made, no.

Q:     Did he ever object and say, no, I want a trial by jury, not by a judge, that you can recall?

A:     I don't recall, no . . .

Q:     Okay.

A:     . . . that he ever said no.

Q:     Did you advise him or did you have a discussion with him that it would be a judge alone deciding his case and not a jury of his peers?

A:     Yes.

Q:     Okay and did at that time did you - - did you believe that he understood the difference between having a jury trial and a judge trial?

A:     Yes.

Q:     Okay. Did anyone force, coerce, or threaten him in order to get him to waive and choose a trial by judge versus a trial by jury?

A:     No, Your Honor. In fact, I think he was the one who initiated the contact with me after the plea was entered.

Q:     So, just - - for clarification there is on the Waiver of Constitutional Rights when the plea was taken there is a line on there that you went over earlier with Mr. Lambright, the prosecutor, that says you have the right to choose a trial by judge or by jury.

A:     Right.

Q:     The arraignment, likewise, that was - - said you have the right to trial by judge or by jury, you've got to talk to your lawyer, do it within 15 days. So basically . . .

11

A: And, Judge, I don't remember Mr. Cooley's arraignment but I know that is our standard practice.

Q: Okay and both - - you also saw him sign that form, I believe you testified, that was his signature . . .

A: Yes.

Q: . . . on the Waiver of Constitutional Rights? Okay. And then you filed that motion to withdraw the plea and said, hey, he wants a trial by judge and you were instructed to do that by Mr. Cooley?

A: Yes.

After Defendant informed the trial court of his decision not to testify at the evidentiary hearing, the trial court accepted arguments from both the State and Defendant. The trial court then issued the following ruling, determining that Defendant knowingly and intelligently waived his right to a jury trial:

BY THE COURT:
　　Okay, I find that there was a knowingly and intelligently - - the defendant knowingly and intelligently waived his right to a trial by jury. This comes from looking at all the evidence including the testimony of the two attorneys, one of them being a judge now. The record will indicate as well as the testimony that there was - - the defendant - - at his arraignment was notified to choose a trial by judge or by jury. And, that shows that he's aware of the issue on his plea form, on the Waiver of Constitutional Rights, that he signed in May of 2011 specifically on there was an issue about waiving the right to a trial by jury or judge alone. So, he went over in those rights - - the attorney testified that they were went over [sic], that he understood those rights, that he signed that form. So, he's aware of those rights, he's - - and, so, he knowingly and intelligently waived those rights. Likewise, in the colloquy with the judge in May of 2011 there was - - the judge, likewise, went over the right to a trial by judge or jury. So, it's not like the defendant has never heard of the issue before. We know on the record or in forms in 2011, by May of 2011, it's been addressed three separate times and there was testimony by his attorney at the time, Ms. Nelson, that they had conversations about that. And, so, also, there was no objection through all of these proceedings that we've been through, there's no objection by the defendant until today in court concerning his waiver of his right to a trial by jury. We're here today because the Third Circuit on an errors patent [sic] and sent it back down for an evidentiary hearing. But, for the record, this is the first time the defendant's ever raised this. He sat through a trial, he never objected to it. His attorneys never objected to it. The attorneys

12

testified that they - - at least one of them testified that they were instructed to file the motion to withdraw the plea and wanted to have a judge alone. That same thing her boss communicated that, but due to Mr. Cooley contacting his office, both testified they never would have filed. [sic] Both attorneys testified they never would have filed this if the defendant had not knowingly and intelligently made that decision and that he understood it. And, there was testimony today by Lisa Nelson, his first attorney, and not Mrs. Wilson, Judge Wilson, and both alluded to the fact that Tony Tillman had discussed this issue with him. Whether it was going over the plea form or - - and that the best course of action was to have a trial by judge. So, we did have two lawyers testify to that today and there was the – - even though the third lawyer did not testify and was not subpoenaed to testify, but the testimony came out on the stand that, you know, Judge Wilson had a conversation with Tony Tillman and that was the best course of action. And, Ms. Nelson had testified that he was over there and they were discussing the rights form and the plea was taken - - before the plea was taken. And, also, for the record, during the trial Judge Wilson objected to the - - to publishing photos by the State of Louisiana and basically said why do we need to do this. You - - the jury's been waived, you can look at this in your chambers. So, considering the testimony of what the record holds of the numerous occasions in which the defendant was notified of the right to a trial by judge or by jury, the fact that there was two motions filed, even though he did not sign either one of those, but based upon his attorneys at the time testimony [sic] and the totality of that testimony then I'm going to find that the defendant knowingly and intelligently waived his right to a trial by jury.

As noted by this court in the original appeal, the record contains no minute entry or transcript wherein Defendant informed the court that he wanted a judge trial over a jury trial. Additionally, the written waiver of jury trial filed by Defendant's attorney was not signed by Defendant. Thus, the record is devoid of a personal waiver by Defendant. In *State v. Spurlock*, 15-1173, pp. 1-2 (La. 9/25/15), 175 So.3d 955, 955-56 (citations omitted), the supreme court found a personal waiver was not necessary as long as the defendant's decision was knowingly and intelligently made:

> It is preferred but not statutorily required for the defendant to waive his right to a jury trial personally. Defense counsel may waive the right on his client's behalf, provided that the defendant's decision to do so was made knowingly and intelligently. The defendant's jury

13

waiver is deemed knowing and intelligent when he understands "that the choice confronting him is, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." The defendant's prior criminal history may be considered in determining whether the defendant knowingly and intelligently waived his right to a jury trial.

In these proceedings, the defendant was aware prior to the instant criminal charges of his due process entitlements as they related to a choice to have his guilt or innocence determined by a judge or a jury of his peers. Among other criminal matters, the defendant has past experience as an accused in the trial of a criminal prosecution where he was found guilty by a jury. In the instant case, the trial record and defense counsel's hearing testimony, which was not found to lack credibility, reflect defense counsel, after consulting with the defendant, waived the defendant's right to a jury trial in open court in the presence of the defendant. Weeks later, the defendant proceeded to a bench trial without raising an objection to the absence of a jury. Under the given facts, the defendant's waiver of a jury trial was knowing and intelligent.

Although the present case is distinguishable from *Spurlock* since the present record does not indicate Defendant had a prior criminal history, the present case is similar to *Spurlock* since the evidentiary hearing testimony indicates that the written waiver of jury trial filed by Judge Wilson was filed after Defendant had been consulted about the waiver. Additionally, as in *Spurlock*, the present Defendant proceeded to a bench trial without raising an objection to the absence of a jury.

We disagree with appellate counsel's argument that no new evidence was introduced at the evidentiary hearing regarding Defendant's waiver of his jury trial. The evidentiary hearing yielded the following evidence regarding Defendant's knowledge of his right to a jury trial and his desire to waive that right. According to the testimony of Ms. Nelson, Defendant was advised of his right to a jury trial at his arraignment and at his no contest plea. When Defendant told Ms. Nelson that he wanted to withdraw his no contest plea, he also told her that he wanted a judge

14

trial. Ms. Nelson followed Defendant's desire and filed a motion to withdraw plea, stating that Defendant wanted to proceed to a judge trial. Ms. Nelson also testified that she and Defendant had discussions regarding a waiver of jury trial, and Ms. Nelson testified that she, without a doubt, believed Defendant knew he had a right to a jury trial. When asked specifically by the trial court if she discussed with Defendant the fact that it would be a judge alone deciding his case instead of a jury of his peers, Ms. Nelson replied, "Yes." Ms. Nelson also replied affirmatively when the trial judge specifically asked her if she believed Defendant understood the difference between having a jury trial and a judge trial.

Judge Wilson, the attorney representing Defendant when the written motion to waive jury trial was filed, testified that she would not have filed the motion without talking to Defendant and would not have filed the motion over Defendant's objection. Additionally, Judge Wilson testified that she would not have filed the motion if she had any doubt that Defendant wanted a bench trial. Furthermore, Defendant proceeded to a bench trial and appeal without any objection to a bench trial and offered no specific testimony at the evidentiary hearing that his waiver was invalid.

The present case is similar to other cases where the court has found the record supports a knowing and intelligent waiver despite the lack of a personal waiver by a defendant. In *State v. A.D.L.*, 11-1142 (La.App. 3 Cir. 5/2/12), 92 So.3d 989, as in the present case, this court conditionally affirmed A.D.L.'s conviction on appeal and remanded the matter to the trial court for an evidentiary hearing to determine whether A.D.L. validly waived his right to a jury trial. After the evidentiary hearing, the trial judge found A.D.L. knowingly and intelligently waived his right to a jury trial, and A.D.L. once again sought review in this court.

Reviewing the trial court's determination, we noted that A.D.L. (like Defendant in the present case) refused to testify at the evidentiary hearing. A.D.L.'s attorney, Edward Lopez, testified at the evidentiary hearing that he made the decision that A.D.L. would be better off being tried by a judge. Mr. Lopez recalled discussing the matter with A.D.L., whom he believed was intelligent and able to comprehend the general nature of the matter he was facing. Mr. Lopez testified that "'[he] would have probably strongly suggested that [A.D.L.] listen to what [his] thoughts were.'" *Id.* at 997. Mr. Lopez believed A.D.L. had made a knowing and intelligent decision to follow his advice to elect a judge trial.

This court noted that Mr. Lopez testified as to the substance of at least one specific conversation he had with A.D.L. regarding a jury trial waiver and testified that there was a second conversation at the courthouse. Mr. Lopez testified at the evidentiary hearing that he "'surely'" told A.D.L. that he had a right to a trial by jury. *Id.* Mr. Lopez "sort of" recalled one meeting in his office during which he discussed the jury trial waiver with A.D.L. *Id.* Mr. Lopez also believed he would have talked to A.D.L. prior to the time he informed the trial court that A.D.L. was waiving a jury trial. This court noted that, although A.D.L. was not in the room when Mr. Lopez advised the trial judge of the waiver, A.D.L. was in the courthouse at that time. Upholding the trial court's determination that A.D.L. entered a knowing and intelligent waiver, this court stated the following:

> At the evidentiary hearing, there was nothing before the hearing judge to refute Defendant's trial counsel's testimony that Defendant knowingly and intelligently waived a jury trial. The hearing judge had Attorney Lopez's testimony to consider, and, as pointed out by the State, Defendant made no objection during trial, nor raised the issue on appeal. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. Furthermore, it is not the function of the appellate court to second-guess the credibility of a witness as determined by the trier of fact or to reweigh evidence absent

16

impingement on the fundamental due process of law. Finally, whereas the issue of whether Defendant waived the right to a jury trial was an issue of fact and not law, we cannot say that the hearing judge abused his considerable discretion.

*Id.* at 1001 (citation omitted).

As in *A.D.L.*, in the present case there is nothing to refute Ms. Nelson's testimony that Defendant told her he wanted a judge trial, nothing to refute Ms. Nelson's testimony that she discussed the waiver of jury trial with Defendant and had no doubt that he knew he had a right to a jury trial, and nothing to refute Ms. Nelson's testimony that she believed Defendant understood the difference between a jury trial and a judge trial. Furthermore, Defendant proceeded to a bench trial without objection.

The fifth circuit has also addressed the situation where there is no personal waiver of a jury trial in *State v. Singleton*, 07-321 (La.App. 5 Cir. 10/30/07), 971 So.2d 396, *writ denied*, 09-2021 (La. 8/18/10), 42 So.3d 391. As in the present case, Singleton's attorney filed a written motion to waive jury trial but failed to have Singleton sign the motion. Unlike the present case, however, Singleton testified at the evidentiary hearing. Although Singleton admitted that his attorney told him a bench trial would be best, Singleton denied telling his attorney to file the written waiver. Despite Singleton's lack of signature on the written motion and despite Singleton's testimony at the evidentiary hearing, the fifth circuit found the testimonies elicited at the evidentiary hearing showed a valid waiver:

> At the evidentiary hearing, defendant acknowledged at least one telephone conversation with defense counsel where his counsel explained the benefit of a bench trial rather than a jury trial. Defendant said that when his defense counsel told him this, defendant responded that he was the lawyer and knew what he was talking about. At the evidentiary hearing, however, defendant explained to the judge he found out after trial that it was better to have a jury trial

because ten out of twelve people render a verdict instead of the one judge. . . .

Mr. Folse [Singleton's attorney] testified at the hearing that they had discussed in depth his choice between a bench trial and a jury trial on several occasions. Although Mr. Folse could not explain why defendant failed to sign the motion, he testified that defendant was fully aware that he would file a Motion to Waive a Jury Trial and was in agreement. Mr. Folse also recalled defendant deciding to waive his right to a jury trial after the trial court expressed what it thought might be in defendant's best interest.

In addition, although not on the record, the trial court recalled defendant specifically telling defense counsel that he wanted a bench trial.

The evidence produced at the evidentiary hearing makes the present case distinguishable from other cases in which this Court has reversed convictions based on insufficient evidence of a valid jury trial waiver.

*Id.* at 399 (citation omitted) (footnote omitted).

As in *Singleton*, there was testimony at the evidentiary hearing in the present case that Defendant was informed of his right to a jury trial and was aware that his attorney intended to waive jury trial. Thus, as in the jurisprudence cited above, the present trial court did not abuse its discretion in determining that Defendant knowingly and intelligently waived his right to a jury trial.

## DECREE

Defendant's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED**.

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.